```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ONEIL REID,                         :

                 Petitioner,        :    11 Civ. 3822 (JMF)(HBP)

    -against-                       :    REPORT AND
                                         RECOMMENDATION
GEORGE DUNCAN,                      :
Superintendent,
                                    :
                 Respondent.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

TO THE HONORABLE JESSE M. FURMAN, United States District Judge,

I. Introduction

Petitioner Oneil Reid seeks, by his petition, a writ of habeas corpus pursuant to 28 U.S.C. § 2254 vacating a judgment of conviction entered on October 12, 2006 after a jury trial, by the Supreme Court of the State of New York, Bronx County (Massaro, J.) for one count of murder in the second degree in violation of New York Penal Law Section 125.25(1). Pursuant to that judgment, petitioner was sentenced on November 1, 2006 to an indeterminate term of imprisonment of twenty-five years to life and five years of post-release parole supervision.

For the reasons set forth below, I respectfully recommend that the petition be denied.

II. Facts

    A.    Facts Giving Rise to Petitioner's Conviction

Petitioner's conviction arises out of the shooting death of Kidan "Miguel Littlejohn" Johnson near 720 East 216th Street in the Bronx on March 18, 2003 (Exhibit 1 to the Declaration of Nancy D. Killian, dated Oct. 19, 2011 (Docket Item 9) ("Killian Decl.") at 5). The facts relevant to the petition are as follows.

Petitioner and three other individuals, Elvis Martin, Martin Forrester and Royan Jackson, were involved in Johnson's murder (Ex. 1 to Killian Decl. at 5). Martin was arrested on April 11, 2003, and Forrester was arrested on September 8, 2003 in connection with the shooting (Docket No. 1 at 2). Both were found with guns at the time of their arrests, and ballistic evidence established that these were the guns used in Johnson's shooting (Ex. 1 to Killian Decl. at 5). Jackson was arrested on December 1, 2005 (Docket No. 1 at 3). Petitioner was arrested on January 10, 2006 (Docket No. 1 at 3).

At the trial of petitioner and his co-defendants Martin

and Jackson, the People sought to call Cassandra Reynolds as a witness to testify about her prior personal relationship with both petitioner and Johnson (Ex. 1 to Killian Decl. at 7). The People sought to elicit her testimony to establish petitioner's motive for the shooting and argued, "she'll testify regarding a prior -- her prior relationship with defendant Oneil Reid and also her prior relationship with the victim, that there's a jealousy factor there . . . Your Honor it goes to motive. You'll hear that they get into a fight about Miguel" (Ex. 1 to Killian Decl. at 7 and 13).

Petitioner's trial counsel objected to this testimony on the grounds that it had very little probative value and argued that "there's absolutely no connection whatsoever to that testimony and what happens with individual Miguel" (Ex. 1 to Killian Decl. at 7 and 14). The People responded that Reynolds would "proffer that that's the reason why they broke up two days before the shooting and then the rest of the evidence in the case is that the victim is deceased two days later" (Ex. 1 to Killian Decl. at 14).

The Trial Court initially agreed with petitioner that the testimony would be too prejudicial, but ultimately allowed Reynolds to testify about her prior relationship with petitioner in a limited way (Ex. 1 to Killian Decl. at 8 and 14). The Court

3

instructed the parties not to speculate about any connection between petitioner's and Reynolds' argument and the shooting (Docket No. 9 at 15). The Trial Court also allowed petitioner's co-defendant Jackson to elicit testimony from Reynolds about her prior relationship with petitioner (Ex. 1 to Killian Decl. at 16). Petitioner requested a mistrial on prejudice grounds, but the Trial Court denied that request (Ex. 1 to Killian Decl. at 16).

At trial, Reynolds testified that in March 2003, she attended high school with petitioner and that they were dating (Ex. 1 to Killian Decl. at 8). She further testified that she and petitioner ended their relationship because petitioner believed that Reynolds was interested in Johnson, and that, after an argument, she returned a ring that petitioner had given her (Ex. 1 to Killian Decl. at 8-9).

On October 12, 2006, the jury found petitioner guilty of murder in the second degree (Ex. 1 to Killian Decl. at 12). On November 1, 2006, petitioner was sentenced to twenty-five years to life in prison and five years of post-release parole supervision (Ex. 1 to Killian Decl. at 12).

B.  State Court Proceedings

On August 11, 2009, petitioner appealed his conviction to the Appellate Division of the Supreme Court for the First Department. Petitioner asserted two claims on appeal: (1) the Trial Court committed reversible error when it allowed prejudicial testimony from Reynolds regarding her past personal relationship with petitioner for the sole purpose of establishing petitioner's motive for the shooting and (2) the testimony of Nickeisha Harris as an eyewitness to the shooting was incredible as a matter of law and was, thus, insufficient proof to support the jury's verdict (Ex. 1 to Killian Decl. at 13 and 19).

On April 22, 2010, the Appellate Division affirmed petitioner's conviction, holding:

> Defendant's legal sufficiency argument is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we find that the verdict was based on legally sufficient evidence. Furthermore, the verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's credibility determination, including its evaluation of the eyewitness's delay in identifying her cousin as one of the assailants.
>
> The court properly admitted the testimony of defendant's former girlfriend that, two days before the homicide, she had broken up with defendant after an argument about the fact she had been talking to the victim. The testimony was relevant to provide a motive for defendant's involvement in the victim's murder (see generally People v Scarola, 71 NY2d 769, 777 [1988]),

>     in that it permitted the jury to draw a reasonable,
>     nonspeculative inference that defendant was motivated
>     by jealousy.

People v. Reid, 72 A.D.3d 550, 551, 898 N.Y.S.2d 841, 841 (1st Dep't 2010).

On June 3, 2010, petitioner sought leave to appeal to the New York Court of Appeals.  Petitioner's leave application asserted the same two issues raised in the Appellate Division (Ex. 4 to Killian Decl.).  The Court of Appeals denied petitioner leave to appeal on August 5, 2010.  People v. Reid, 15 N.Y.3d 808, 934 N.E.2d 902, 898 N.Y.S.2d 841 (2010).

    C.    Pending Petition

Petitioner seeks habeas relief on the sole ground that the admission of Reynolds' testimony denied him the right to a fundamentally fair trial (Docket No. 1 at 10 n.3 and 15).

III.    Analysis

    A.    Exhaustion and Procedural Bar

        1.    Applicable Legal
             Principles

It is fundamental that a state prisoner seeking to vacate his conviction on the ground that his federal

constitutional rights were violated must first exhaust all available state remedies.  28 U.S.C. § 2254(b); Baldwin v. Reese, 541 U.S. 27, 29 (2004); Picard v. Connor, 404 U.S. 270, 275 (1971); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808-09 (2d Cir. 2000).

> If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."  28 U.S.C. § 2254(b)(1).

Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001).

A two-step analysis is used to determine whether a claim has been exhausted:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . .
>
> Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) (citations omitted), overruled on other grounds, Daye v. Attorney Gen., 696 F.2d 186, 195 (2d Cir. 1982) (en banc).  Accord Powell v. Greiner, 02 Civ. 7352 (LBS), 2003 WL 359466 at *1 (S.D.N.Y. Feb. 18, 2003) (Sand, D.J.); Alston v. Senkowski, 210 F. Supp. 2d 413,

417 (S.D.N.Y. 2002) (Stein, D.J.); Boyd v. Hawk, 94 Civ. 7121 (DAB), 1996 WL 406680 at *3 (S.D.N.Y. May 31, 1996) (Batts, D.J.); see also Baldwin v. Reese, supra, 541 U.S. at 29; McKethan v. Mantello, 292 F.3d 119, 122 (2d Cir. 2002), quoting Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001).

To satisfy the first step of the exhaustion test, a habeas petitioner must fairly present his federal claim to the state courts. Anderson v. Harless, 459 U.S. 4, 6 (1982); Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002); Galarza v. Keane, 252 F.3d 630, 638 (2d Cir. 2001); Daye v. Attorney Gen., supra, 696 F.2d at 191. In Daye v. Attorney Gen., supra, 696 F.2d at 194, the Court of Appeals set forth the methods by which a federal claim can be fairly presented to a state court where there has been no express reliance on a provision of the federal Constitution:

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

See also Strogov v. Attorney Gen., 191 F.3d 188, 191 (2d Cir. 1999) (a habeas petitioner has fairly presented his claim when he

8

or she has "informed [the State] courts of 'all of the essential factual allegations' and 'essentially the same legal doctrine [asserted] in [the] federal petition'") (citation omitted).

To satisfy the second step of the analysis, "a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991), citing Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam); see also O'Sullivan v. Boerckel, 526 U.S. 838, 847-48 (1999). Exhaustion requires that a prisoner must even pursue discretionary state appellate remedies before he can raise a claim in a habeas corpus proceeding. Baldwin v. Reese, supra, 541 U.S. at 29; O'Sullivan v. Boerckel, supra, 526 U.S. at 846-48.

> "In New York, to invoke 'one complete round of the State's established appellate review process' [O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)], a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005).

Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005).

Unexhausted claims are deemed exhausted if the petitioner no longer has any remedy available in the state courts. Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Nevarez

9

v. Artuz, 99 Civ. 2401 (LBS), 2000 WL 718450 at *3 (S.D.N.Y. June 5, 2000) (Sand, D.J.); Hurd v. Stinson, 99 Civ. 2426 (LBS), 2000 WL 567014 at *7 (S.D.N.Y. May 10, 2000) (Sand, D.J.).

> This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claims procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Aparicio v. Artuz, supra, 269 F.3d at 90.

In the absence of a showing of cause for and prejudice from the failure to raise the claim in conformity with state procedural requirements, or a fundamental miscarriage of justice, such a claim, although deemed exhausted, will be forfeited and barred from serving as the basis for habeas relief.

> Where a petitioner has failed to present his or her federal claims to the state courts in accordance with state procedural requirements, and no longer has recourse to state review, he or she will be found to have met the exhaustion requirement of 28 U.S.C. § 2254(b); however, the claims will be subject to procedural bar in this court. See Coleman v. Thompson, 501 U.S. 722 (1991); Castille v. Peoples, 489 U.S. 346, 350 (1989); Teague v. Lane, 489 U.S. 288, 297-98 (1989). If there is such a procedural bar, the claim cannot be heard absent a showing of cause for the procedural default and prejudice. Wainwright v. Sykes, 433 U.S. 72 (1977).

10

Norwood v. Hanslmaier, No. 93 CV 3748, 1997 WL 67669 at *2 (E.D.N.Y. Feb. 11, 1997); accord Parker v. Ercole, 582 F. Supp. 2d 273, 290 (N.D.N.Y. 2008); Garner v. Superintendent of Upstate Corr. Fac., No. 9:01-CV-0501 (LEK/DEP), 2007 WL 2846907 at *12 (N.D.N.Y. Sept. 26, 2007).

      2.   Application of the Foregoing Legal Principles

Petitioner's claim is unexhausted because he failed to raise it in constitutional terms before the state courts. However, because there are no state remedies available to petitioner, his claim must be deemed exhausted but procedurally barred.

Of the four methods specified in Daye by which a petitioner can fairly present a federal claim to a state court, only one is potentially applicable here: "reliance on state cases employing constitutional analysis in like fact situations." Daye v. Attorney Gen., supra, 696 F.2d at 194.

In his direct appeal, petitioner argued that the admission of Reynolds' testimony was error only because its prejudicial nature outweighed its probative value.[1]  In support

---

[1]Despite petitioner's contention in this court that he argued on direct appeal that the admission of Reynolds' testimony
(continued...)

11

of this argument, petitioner cited only New York state cases, which stand for the general proposition that a trial court must weigh the probative value of evidence against its potential for undue prejudice. See, e.g., People v. Scarola, 71 N.Y.2d 769, 777, 525 N.E.2d 728, 732, 530 N.Y.S.2d 83, 86 (1988) (trial court can exclude even relevant evidence if its probative value is substantially outweighed by its danger of unfair prejudice or to mislead the jury); People v. Ventimiglia, 52 N.Y.2d 350, 359, 420 N.E.2d 59, 62, 438 N.Y.S.2d 261, 264 (1981) (court must weigh probative value of evidence against its prejudicial effect); People v. Davis, 43 N.Y.2d 17, 27, 371 N.E.2d 456, 460, 400 N.Y.S.2d 735, 740 (1977) (court can limit introduction of relevant evidence if its probative value is outweighed by its prejudicial effect); People v. Feldman, 299 N.Y. 153, 169-70, 85 N.E.2d 913, 921 (1949) (evidence of "merely slight, remote or conjectural significance" should not have been admitted); People v. Wlasiuk, 32 A.D.3d 674, 678, 821 N.Y.S.2d 285, 289 (3d Dep't 2006) (addressing whether the trial court properly engaged in the substantive balancing of evidence's probative value against its

---

[1](...continued)
denied him a fair trial (Docket No. 1 at 10, 11), there is no such reference in either petitioner's brief before the Appellate Division or in his letter for leave to appeal to the Court of Appeals.

potential undue prejudice); People v. Stroman, 83 A.D.2d 370, 373, 444 N.Y.S.2d 463, 465 (1st Dep't 1981) (court properly exercised discretionary obligation to weigh evidence's probative value against its undue prejudice).

None of these cases employed a federal constitutional analysis or contained any citations to cases applying such an analysis.  Thus, petitioner's appellate submissions were insufficient to put the state courts on notice of a constitutional violation for habeas exhaustion purposes.  See Alexander v. Connell, 10 Civ. 6658 (NRB), 2012 WL 3249415 at *7 (S.D.N.Y. Aug. 3, 2012) (Buchwald, D.J.) (habeas claim based on allegedly erroneous admissions of evidence was unexhausted where petitioner did not cite federal authority or rely on constitutional analyses embedded in state law or conventional constitutional terminology); Lewis v. Batista, 01 Civ. 4316 (KMW)(DF), 2002 WL 31202712 at *6 (S.D.N.Y. Aug. 30, 2002)(Freeman, M.J.) (Report & Recommendation) ("[M]ere allegations of state evidentiary rule violations generally neither fall within the mainstream of federal constitutional litigation nor call to mind a right protected by the federal Constitution.").  Thus, because petitioner failed to present his claim in federal terms to the state court, his habeas claim here is unexhausted.

13

Though petitioner's claim is unexhausted, it is nonetheless deemed exhausted but procedurally barred.  There are no remaining remedies available to petitioner in the state courts.  Petitioner has already sought leave to appeal with the Court of Appeals, but failed to raise his claim in federal constitutional terms at that time.  He can no longer do so now because New York permits a criminal defendant to file only one application for leave to appeal to the New York Court of Appeals. Grey v. Hoke, supra, 933 F.2d at 120.  In addition, because the claim was based on the record and could have been raised on direct appeal, petitioner can not now raise the claim in a state collateral attack under Section 440.10 of the New York Criminal Procedure Law.  See N.Y. Crim. Proc. § 440.10(2)(c) (barring state collateral review of claims that could have been raised on direct appeal).  Because all state court procedural avenues are closed to him, petitioner's claim is procedurally defaulted.  See Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006) (claim was procedurally defaulted where the petitioner had "already taken his one direct appeal, and this claim is procedurally barred in a collateral attack on his conviction"); Tucker v. Artus, 07 Civ. 10944 (RJH)(DF), 2011 WL 7109332 at *9 (S.D.N.Y. Dec. 12, 2011) (Freeman, M.J.) (Report & Recommendation) (claim was procedurally barred because the petitioner had "no procedural recourse to New

14

York's courts to advance his unexhausted claims" including no remedy under direct appeal or a Section 440.10 motion); Kirk v. Burge, 646 F. Supp. 2d 534, 544 (S.D.N.Y. 2009) (Swain, D.J.) (adopting Report & Recommendation of Gorenstein, M.J.) (petitioner's claim that could not be raised in a Section 440.10 petition was procedurally barred under New York law and deemed exhausted on federal habeas review). Petitioner cannot now seek federal habeas review of his claim, unless he can overcome this procedural bar. Alexander v. Connell, supra, 2012 WL 3249415 at *8.

  Petitioner has made no showing that there was any cause for and prejudice from his failure to raise his federal claim in the state courts. Similarly, petitioner has made no showing that a failure to consider his claim will result in a fundamental miscarriage of justice. Because he has made neither showing, petitioner's claim remains procedurally barred. See Jimenez v. Walker, supra, 458 F.3d at 149. Accordingly, there is no basis for relief, and petitioner's writ for habeas corpus should be denied.

V. Objections

  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have

15

fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jesse M. Furman, United States District Judge, 500 Pearl Street, Room 630, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Furman. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        September 25, 2012

Respectfully submitted,

/s/ Henry Pitman

HENRY PITMAN
United States Magistrate Judge

16

COPIES MAILED TO:

Jason L. Russo
Gaitman & Russo
626 West Rexcorp Plaza
West Tower 6th Floor
Uniondale, NY 11556


Nancy D. Killian
Bronx District Attorney
198 E. 161st Street
Bronx, NY 10451